UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
VADIM MIKHAYLOV and                              :
ALEXANDR SYSOEV,                                 :
                                                 :
                            Plaintiffs,          :
                                          :    **MEMORANDUM & ORDER**
          -against-                           :    15-CV-7109 (DLI) (VMS)
                                                 :
Y & B TRANSPORTATION CO., YURY                   :
IAKOVLEV,                                        :
                                                 :
                            Defendants.          :
----------------------------------------------------------------x

**DORA L. IRIZARRY, Chief United States District Judge:**

       Plaintiffs Vadim Mikhaylov ("Mikhaylov") and Alexandr Sysoev ("Sysoev") (collectively, "Plaintiffs") bring this action against their former employer, Y & B Transportation ("Y&B"), and its agent, Yury Iakovlev ("Iakovlev") (collectively, "Defendants"). Individually, Plaintiffs allege that Defendants: (1) failed to pay them minimum wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* ("FLSA Claims"); (2) failed to pay them minimum wages in violation of New York State Labor Law ("NYLL") § 652 ("NYS Minimum Wage Claims"); (3) failed to provide them with notices of compensation in violation of NYLL § 195(1) ("NYS Notice Claims"); (4) failed to provide them with wage statements in violation of NYLL § 195(3) ("NYS Statement Claims"); (5) failed to pay them their earned compensation in violation of NYLL § 198(1-a) ("NYS Withheld Wages Claims"); (6) breached their employment contracts ("Breach of Contract Claims"); and (7) have been unjustly enriched ("Unjust Enrichment Claims"). *See* Amended Complaint ("Am. Compl."), Dkt. Entry No. 5.

       Defendants filed the instant Motion to Dismiss arguing insufficient service of process and failure to state a claim under Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6), respectively. *See* Att'y Aff. in Supp. of Mot. to Dismiss ("Def. Aff."), Dkt. Entry No. 11-1. Plaintiffs oppose

the motion. *See* Pl.'s Att'y Aff. in Opp. to Def.'s Mot. to Dismiss ("Opp. Aff."). Defendants did not file any reply papers. After the motion was briefed, the parties engaged in discovery under the supervision of the assigned magistrate judge who certified discovery was complete on October 25, 2016. Oct. 25, 2016 Minute Entry.

For the reasons set forth below, Defendants' Motion to Dismiss is denied.

## BACKGORUND[1]

In the simplest terms, Plaintiffs allege that they were swindled out of wages Defendants owed them for work performed over the course of approximately one month, from July 9, 2014 through August 5, 2014. Am. Compl. at ¶ 49.

Y & B is a long-haul trucking company organized under the laws of the Michigan and doing business in New York. *Id*. at ¶¶ 4, 14. Iakovlev is an agent of Y & B who was responsible for executing a number of tasks on Y & B's behalf. During the period at issue, Iakovlev was charged with, *inter alia*: hiring and firing employees, setting employee work schedules and conditions, setting employee compensation rates, training employees, and all other "major decisions for the company." *Id*. at ¶¶ 15-18, 28-31, 33-42.

In April 2014, Iakovlev contacted Mikhaylov after seeking a referral for a recent graduate from the Red Hook Commercial Driving School in Brooklyn, New York. *Id*. at ¶¶ 20-21. After a phone interview, Iakovlev hired Mikhaylov to work as a driver for Y & B. *Id*. at ¶ 22. On or about May 8, 2014, Iakovlev drove his car to Mikhaylov's apartment in Brooklyn and had Mikhaylov drive that same vehicle to a truck parked in New Jersey. *Id*. at ¶ 23. Iakovlev and Mikhaylov thereafter drove that truck together to its destination. *Id*. at ¶ 23. From that point until some time in June 2014, Iakovlev and Mikhaylov drove trucks for Y & B as a team. *Id*. at ¶¶ 24, 32. It was

---

[1] The following facts are taken entirely from the Amended Complaint, which is presumed to be true at this stage of the proceeding. *DeJesus v. HF Mgmt. Servs., LLC,* 726 F.3d 85, 87 (2d Cir. 2013) (internal citations omitted).

during this period that Iakovlev trained Mikhaylov to drive trucks, complete driver logs, and perform various other maintenance-related tasks. *Id*. at ¶ 33.

In early June 2014, Iakovlev asked Mikhaylov if he could refer another graduate of the Red Hook Commercial Driving School to Y & B. *Id*. at ¶ 25. Mikhaylov referred his co-plaintiff, Sysoev. *Id*. Shortly thereafter, Iakovlev also hired Sysoev to work as a driver for Y & B. *Id*. at ¶ 26. Iakovlev had Mikhaylov train Sysoev, as Iakovlev had trained Mikhaylov. *Id*. at ¶ 34.

Mikhaylov's employment with Y & B lasted from May 2014 through August 5, 2014. *Id*. at ¶ 24. Sysoev's employment lasted from June 13, 2014 through August 5, 2014. *Id*. at ¶ 27.

By agreement between the parties, Plaintiffs' compensation was set at $0.20 per mile traveled and $20.00 per loading and unloading of the truck, if there were more than two loadings and unloadings per trip. *Id*. at ¶ 38. Y & B also would reimburse Plaintiffs for work expenses upon submission of receipts and documentation. *Id*. at ¶ 39. Plaintiffs initially received payments by check, but eventually were paid by wire transfers. *Id*. at ¶ 40. The responsibility of ensuring that Plaintiffs were timely and accurately paid belonged to Iakovlev. *Id*. at ¶ 42.

Plaintiffs allege that they were not paid for the four weeks worked from July 9, 2014 to and including August 5, 2014. *Id*. at ¶ 49. According to Plaintiffs, during that time, Mikhaylov and Sysoev worked a total of 122.25 hours and 147 hours, respectively. *Id*. at ¶ 50. Applying the terms of the agreement outlined above, Mikhaylov claims that he is due $3,040.00 and Sysoev claims that he is due $2,967.80. *Id*. at ¶¶ 51-52. Plaintiffs claim Defendants' failure to pay them was willful. *Id*. at ¶ 53.

In addition to being denied the compensation due to them under their employment agreements, Plaintiffs allege that Defendants have not maintained adequate employment records (*Id*. at ¶ 43) and neither have provided them with notices stating the terms of their compensation

(*Id*. at ¶¶ 45, 54) nor statements documenting their respective gross wages, deductions, and net wages for any payments (*Id*. at ¶ 55).

Presently before this Court is Defendants' Motion to Dismiss the Amended Complaint. *See generally* Def. Aff. Defendants argue that the present action should be dismissed because neither Y & B nor Iakovlev were served within Federal Rule of Civil Procedure 4(m)'s timeframe. *Id*. at ¶¶ 4-31. They further argue that: (1) the Breach of Contract and Unjust Enrichment Claims must be dismissed as preempted by the FLSA; (2) the NYS Minimum Wage Claims must be dismissed because they, too, are preempted by the FLSA; and (3) the FLSA Claims and the NYS Minimum Wage Claims should be dismissed because Plaintiffs allege pay rates above minimum wage (*Id*. at ¶¶ 37-66).

## DISCUSSION

### I. INSUFFICIENT SERVICE OF PROCESS

**A. Legal Standard**

When a defendant moves to dismiss for insufficient service of process under Rule 12(b)(5) of the Federal Rules of Civil Procedure, "'the plaintiff bears the burden of establishing that service was sufficient.'" *Allstate Ins. Co. v. Rosenberg*, 771 F. Supp.2d 254, 260 (E.D.N.Y. 2011) (quoting *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010)). When applying New York State law, a plaintiff may carry this burden by submitting a process server's affidavit, thereby establishing a rebuttable presumption of proper service. *Old Republic Ins. Co. v. Pacific Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2001) (citing *NYCTL 1997-1 Trust v. Nillas*, 288 A.D.2d 279 (2d Dep't 2001)). A defendant may rebut this presumption through a sworn affidavit in which the defendant denies receipt of service. *Id.* at 57-58 (citing *Skyline Agency, Inc. v. Ambrose Coppotelli, Inc.*, 117 A.D.2d 135, 139 (2d Dep't 1986)); *Id.* at 58 (quoting *Simonds v. Grobman*, 277 A.D.2d 369, 370

(2d Dep't 2000) (explaining that a defendant must swear to "specific facts" to rebut the presumption)). Where a defendant's affidavit successfully rebuts the presumption of proper service, the district court must hold an evidentiary hearing. *Id.* at 57-58 (citing *Skyline*, 117 A.D.2d at 139-40). The failure to hold an evidentiary hearing in such a situation is reversible error. *See Davis v. Musler*, 713 F.2d 907 (2d Cir. 1983).

### B. Y & B Conceded Service

Y & B claims that it was not timely served and, as such, the proceeding against it must be dismissed. Def. Aff. at ¶¶ 4-21. The Court rejects this argument, which is belied by the record. In the Motion to Dismiss, Defendants aver that "As of the date of this submission, Defendant Y & B Transportation was not served with process." *Id*. at ¶ 9. Similarly, Iakovlev, the "registered agent" for Y & B, insists that "Y & B Transportation did not receive the summons and complaint as of" March 29, 2016. Decl. of Yury Iakovlev ("Iakovlev Decl."), Dkt. Entry No. 11-2 at ¶ 4. These claims are patently false. Besides the fact that Y & B has appeared and moved to dismiss, demonstrating receipt of the summons and pleadings, significantly, in a March 7, 2016 letter addressed to the magistrate judge requesting an extension of time to respond to the Amended Complaint, Y & B *conceded* service without reservation or exception. *See* Mar. 7, 2016 Ltr., Dkt. Entry No. 9. ("Defendant Y & B was served with the instant complaint on or around February 18, 2016."). In light of counsel's representations, the Court need not and does not consider Y & B's argument that it was never served. *See generally Krank v. Express Funding Corp.*, 133 F.R.D. 14, 16 (S.D.N.Y. 1990) (only a defendant "who has not acknowledged service of a complaint" can claim improper service).

**C. Plaintiffs Failed to Complete Service Upon Iakovlev**

Iakovlev, like his codefendant, also claims that he was not served within the requisite ninety-day timeframe. Def. Aff. at ¶¶ 22-31. Since Plaintiffs instituted this action by filing their initial Complaint on December 14, 2015, service had to be effectuated on or before March 14, 2016.[2] Prior to the expiration of that deadline, Iakovlev's attorney submitted a letter to the magistrate judge requesting an extension of time to respond to the Amended Complaint. Mar. 7, 2016 Ltr. Approximately two weeks after the deadline for timely service expired, Defendants filed their Motion to Dismiss and claimed that neither entity had been served. *See* Def. Aff. at ¶ 9 (Y & B), ¶¶ 25-27, 29 (Iakovlev). By sworn declaration, Iakovlev insists that, "At no time in this matter was I personally served with summons for myself, individually, nor was summons left with anyone at my residence." Iakovlev Decl. at ¶ 5. While Iakovlev indicated that he is a resident of New York, he gave his business address as 621 Kirts Boulevard, Suite 203, Troy, Michigan 48084. *Id*. at ¶ 7.

In response, Plaintiffs submitted an affidavit from Process Server Scott Witmer, dated March 11, 2016. Opp. Aff., Ex. 2. In that affidavit, Mr. Witmer states that the summons was "posted for Yury Iakovlev" on February 17, 2016 at 621 Kirts Boulevard., Troy, Michigan 48084 and mailed to that same address on February 19, 2016. *Id*. As Defendants have chosen to forgo their right to file reply papers, Plaintiffs' arguments go unanswered.

Under the federal statutory scheme, an individual may be served by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." FED. R. CIV. P. 4(e)(1). Accordingly, proper service under either New York or Michigan law would suffice. Without any citation to precedent or statute, Plaintiffs claim that they have complied with the service requirements of Michigan law.

---

[2] While the ninety days would have expired on March 13, 2016, because that was a Sunday, service was extended to "the next day that is not a Saturday, Sunday, or holiday." FED. R. CIV. P. 6(a)(1)(C).

6

Opp. Aff. at ¶ 7. The Court disagrees. Plaintiffs have not complied with Michigan law, which requires that an individual be served with a copy of the summons and complaint: (1) personally; (2) by registered or certified mail, return receipt requested; or (3) by registered or certified mail to that individual's last known address *and* service upon that individual's agent within Michigan. *See* MICH. CT. RULES 2.105(A), (B).

In New York, one of the methods by which a party may serve an individual is through the two-step process outlined in Rule 308(2) of the New York Civil Practice Law and Rules ("N.Y.C.P.L.R."). To effectuate service under that provision, a plaintiff first must deliver the summons to "a person of suitable age and discretion" at the defendant's "actual place of business." N.Y.C.P.L.R. 308(2). Then, the plaintiff must mail the summons by first class mail to the defendant at his or her "actual place of business." *Id.*

Insofar as service mailing, New York State law is clear that, so long as the plaintiff can show that he or she used the proper address, the defendant cannot avoid service by claiming the documents were never actually received. *See Melton v. Brotman Foot Care Grp.*, 198 A.D.2d 481, 481-82 (1st Dep't 1993) (discussing the requirements of Rule 308(2)). The court's jurisdiction attaches at the time of mailing. *Id*. The affidavit of service for Iakovlev notes that the summons was sent "First Class" on February 19, 2016, to 621 Kirts Boulevard, Troy, Michigan 48084. *See* Opp. Aff., Ex. 2. Since Iakovlev identified that address as his usual place of business, he cannot avoid service by claiming that he never actually *received* the summons.[3]

While the Court finds that Plaintiffs completed the second step under N.Y.C.P.L.R. 308(2), there is no allegation of physical delivery to a person of suitable age and discretion at the place of

---

[3] This is also the address maintained by the Michigan Department of Licensing and Regulatory Affairs. *See* Corporate Entity Details for Y & B Transportation Co., MICH. DEP'T OF LICENSING & REGULATORY AFFAIRS, http://www.dleg.state.mi.us/bcs_corp/dt_corp.asp?id_nbr=05551V&name_entity=Y%26B%20TRANSPORTATIO N%20CO.

7

business. *See generally*, Opp. Aff. As such, the Court cannot conclude that service was properly effectuated on Iakovlev under Rule 308(2). While a hearing would normally be needed to resolve this dispute, for the reasons stated in § II(D), *infra*, no such hearing is necessary.

**D. The Deadline to Serve Iakovlev Is Extended**

Timeliness of service is governed by Federal Rule of Civil Procedure 4(m), which states, in pertinent part:

> If a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against the defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

The Second Circuit has explained that, when district courts apply this rule, they "have discretion to grant extensions even in the absence of good cause." *Zapata v. City of New York*, 502 F.3d 192, 196 (2d Cir. 2007); *see also Beauvoir v. U.S. Secret Serv.*, 234 F.R.D. 55, 57-58 (E.D.N.Y. 2006) ("In light of [Supreme Court precedent], the view that dismissal under Rule 4(m) is mandatory . . . is no longer valid."). For almost two decades, courts in this Circuit have recognized that "'[t]he determination of good cause under Rule 4 is to be construed liberally to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice.'" *Am. Int'l Tel., Inc. v. Mony Travel Servs., Inc.*, 203 F.R.D. 95, 97 (S.D.N.Y. 2001) (quoting *Snall v. City of New York*, No. 97-CV-5204 (ILG), 1999 WL 1129054, *3 (E.D.N.Y. Oct. 19, 1999)).

Here, there is no dispute that Iakovlev received actual notice of this proceeding and that his rights were meaningfully protected. His attorney submitted a timely request for an extension of time to respond to the Amended Complaint and thereafter filed the instant Motion to Dismiss. On April 19, 2016, Plaintiffs filed a Proposed Scheduling Order for case management consented to by Iakovlev's attorney. Proposed Scheduling Order, Dkt. Entry No. 17. On April 21, 2016, his

attorney appeared at a conference before the magistrate judge. Apr. 21, 2016 Minute Entry. On October 5, 2016, his attorney again appeared on a conference call concerning discovery. Oct. 5, 2016 Minute Entry. On October 24, 2016, Plaintiffs submitted a letter on behalf of all parties stating that discovery was complete. Joint Status Ltr., Dkt. Entry No. 20. As borne out by the docket, Iakovlev's counsel has actively participated in this proceeding at every step of the way. The parties are poised to move for summary judgment, negotiate a settlement, or go to trial. The Court finds no reason, under the facts and circumstances here, to conclude that Iakovlev would be prejudiced by extending the time to properly effectuate service under N.Y.C.P.L.R. 308(2).

Notably, dismissal at this juncture, after discovery was closed, for want of rectifying a procedural defect, would result in a waste of time and resources. The statute of limitations for willful violations of the FLSA is three years. 29 U.S.C. § 255(a). Plaintiffs alleged that the FLSA Claims were premised upon "willful" violations and Defendants have not disputed that claim. *Compare* Am. Compl. at ¶¶ 53, 57-58, 60-61, *with* Def. Aff. Assuming that the statute of limitations began to run on the first day Plaintiffs worked but were not paid, Plaintiffs could refile their federal action until at least July 9, 2017. Furthermore, a dismissal for untimely service is *without* prejudice. FED. R. CIV. P. 4(m). The other claims at issue also would remain viable and could be re-filed on July 9, 2017. *See* N.Y. LAB. LAW § 663(3) (explaining that an action to recover minimum wages has a six-year statute of limitations); *Tutka v. Optimum Constr., Inc.*, No. 15-CV-604 (DLI) (CLP), 2016 WL 4991536, at *4 (E.D.N.Y. Sept. 16, 2016) (noting a six-year statute of limitations for breach of contract claims) (internal citations omitted); *Kermanshah v. Kermanshah*, 580 F. Supp.2d 247, 263 (S.D.N.Y. 2008) ("The unjust enrichment period . . . is three years if plaintiff seeks monetary damages.") (internal citations omitted). "Thus, it is a virtual certainty that were this action dismissed for insufficiency of service of process, it would simply be re-filed and

re-prosecuted, presumably in a more diligent fashion, and [Defendants] would find [themselves] in the very position they occup[y] now." *Tevdorachvili v. Chase Manhattan Bank*, 103 F. Supp.2d 632, 639 (E.D.N.Y. 2000).

This Court finds that Iakovlev would not be prejudiced by granting Plaintiffs an extension of the Rule 4(m) deadline to complete service, and the best interests of all parties involved would be served. Consequently, Plaintiffs have until April 7, 2017 to serve Iakovlev personally in accordance with N.Y.C.P.L.R. 308(2). Immediately upon completion of service, Plaintiffs shall electronically file proof of service by affidavit with the Court.

## II. FAILURE TO STATE A CLAIM

### A. Legal Standard

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard under Rule 8 does not require "detailed factual allegations," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007), "but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555 (internal citations and quotation marks omitted). On a Rule 12(b)(6) motion, the court must accept as true all factual statements alleged in the complaint and draw all reasonable inferences in favor of the nonmoving party. *Taylor v. Vt. Dep't of Educ.,* 313 F.3d 768, 776 (2d Cir. 2002).

10

### B. The Common Law Claims Are Not Preempted by the FLSA

The first argument advanced by Defendants is that the Breach of Contract and Unjust Enrichment Claims should be dismissed because they are preempted by the FLSA. Def. Aff. at ¶¶ 37-43. In making this argument, the Defendants rely primarily on *DeSilva v. North Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp.2d 497 (E.D.N.Y. 2011) for the premise that the "FLSA preempts any state common law claims that are duplicative of" claims brought under the FLSA. Def. Aff. at ¶ 39 (internal citations and quotation marks omitted). Defendants' reliance on *DeSilva* is misplaced, as its preemption holding does not apply to the type of claims raised here, as the *DeSilva* court acknowledged.

Generally, "[t]here are three ways in which federal law may preempt state law: express preemption, implied or field preemption, and conflict preemption." *New York v. West Side Corp.*, 790 F. Supp.2d 13, 19 (E.D.N.Y. 2011) (internal citations omitted). However, none of these doctrines apply in this scenario, as the FLSA creates liability only with respect to overtime compensation and minimum wage violations. *See* 29 U.S.C. § 216(b). *DeSilva* highlights this point. In that case, the plaintiffs brought claims under the FLSA, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.*, and state common law for "unpaid wages and overtime." 770 F. Supp.2d at 503. After a thorough discussion of preemption theories, the court dismissed the RICO and state common law claims insofar as they were duplicative of the FLSA claims for overtime compensation.[4] *Id.* at 519, 530. However, those claims were not preempted insofar as they sought what was due under a separate employment contract. The court elaborated:

> [P]laintiffs' claims are not solely based on defendants' failure to comply with the FLSA's overtime requirements, but also are based

---

[4] Notably, some of those same causes of action were dismissed for failing to state a claim. *DeSilva*, 770 F. Supp.2d at 519-30, 534-35.

> on defendants' alleged failure to comply with their contractual obligation to pay plaintiffs for all hours worked, including non-overtime hours that fall outside of the FLSA's scope. Accordingly, such claims based on unpaid 'straight' or 'regular' time are not duplicative of the FLSA claims and, accordingly, are not preempted by the FLSA.

*Id.* at 519; *see also Id.* at 530 ("[T]he common law claims that are based upon the alleged failure to properly compensate plaintiffs for 'straight time' wages are not duplicative of the FLSA cause of action, and therefore are not preempted."); *Sosnowy v. A. Perri Farms, Inc.*, 764 F. Supp.2d 457, 470-71 (E.D.N.Y. 2011) (dismissing breach of contract and unjust enrichment claims seeking overtime compensation as preempted by the FLSA); *Barrus v. Dick's Sporting Goods, Inc.*, 732 F. Supp.2d 243, 263 (W.D.N.Y. 2010) (dismissing common law claims for unpaid overtime as preempted by the FLSA).

Plaintiffs' FLSA Claims seek unpaid minimum wages that are due to them under federal law. Am. Compl. at ¶¶ 57-58. 60-61. The Breach of Contract Claims, in contrast, seek payment under the terms of an "oral employment agreement," the rates of which Plaintiffs have alleged and are more than the minimum wage. *Id.* at ¶¶ 91-97, 104-11. Similarly, the Unjust Enrichment Claim, pled in the alternative to the Breach of Contract Claims, seek the "reasonable value" of services rendered. *Id.* at ¶¶ 103, 117. Insofar as Plaintiffs rely on these common law causes of action to vindicate the terms of the alleged employment contracts between themselves and Defendants, the claims are not preempted by the FLSA. Consequently, Defendants' motion to dismiss the state common law claims is denied.

### C. The NYS Minimum Wages Claims Are Not Preempted by the FLSA

Defendants' second argument is an extension of their first, in that they assert that the NYS Minimum Wage Claims are preempted by the FLSA. Def. Aff. at ¶¶ 44-46. This argument is unavailing. Both the FLSA and the NYLL set minimum hourly rates that employers must pay

employees for time worked. From July 9, 2014 to August 5, 2014, the FLSA's minimum wage was $7.25 per hour and the NYLL's minimum wage was $8.00 per hour. 29 U.S.C. § 206(a)(1)(C); N.Y. LAB. LAW § 652(1). The FLSA cautions that "[n]o provision of this chapter or of any order thereunder shall excuse noncompliance with any Federal or State law or municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter." 29 U.S.C. § 218(a). With this language, Congress specifically recognized that the protections established by the FLSA "merely set the floor for wages owed," and that states were free to set their own minimum wages at levels above that set by the federal government. *DeSilva*, 770 F. Supp.2d at 518. Indeed, New York State did just that and numerous courts in this district have recognized that alleging claims for minimum wages due under federal law will not prevent a plaintiff from stating claims for minimum wages due under state law. *See Gonzalez v. Jane Roe Inc.*, No. 10-CV-1000 (NGG) (RML), 2015 WL 4662490, at *2 (E.D.N.Y. Jul. 15, 2015), *report and recommendation adopted and modified on other grounds by* 2015 WL 4681151 (E.D.N.Y. Aug. 6, 2015) (internal citations omitted); *Ghosh v. Neurological Servs. of Queens*, No. 13-CV-1113 (ILG) (CLP), 2015 WL 431807, at *2 (E.D.N.Y. Feb. 3, 2015) (internal citations omitted); *Gonsalez v. Marin*, No. 12-CV-1157 (ENV) (RML), 2014 WL 2514704, at *2 (E.D.N.Y. Apr. 25, 2014), *report and recommendation adopted by* 2014 WL 2526918 (E.D.N.Y. Jun. 4, 2014) (internal citations omitted); *Hernandez v. P.K.L. Corp.*, No. 12-CV-2276 (NG) (RML), 2013 WL 5129815, at *3 (E.D.N.Y. Sept. 12, 2013) (internal citations omitted).

As such, Defendants' motion to dismiss the NYS Minimum Wage Claims because they are preempted by the FLSA is denied.

### D. Plaintiffs May Seek Statutorily Guaranteed Minimum Wages

In their papers, Defendants address the federal and state law minimum wage arguments separately. Def. Aff. at ¶¶ 47-61 (federal), 62-66 (state). The Court, however, addresses these

arguments together because the heart of each one is the same: Plaintiffs cannot state claims for unpaid minimum wages under the FLSA or the NYLL because they have pleaded rates *above* the minimum required. *Id*. at ¶¶ 47-66. Defendants arrive at this conclusion by dividing the amount each Plaintiff claims he is due by the number of hours each Plaintiff claims he worked without pay. Applying this formula, since Mikhaylov claims he should have received $3,040 for the 122.25 hours of work performed, he claims an hourly rate of $24.87 per hour. *Id*. at ¶¶ 48-50. Similarly, since Sysoev claims he should have received $2,967.80 for the 147 hours worked, he actually claims an hourly rate of $20.19 per hour.[5] *Id*. at ¶¶ 51-53. As the minimum wage under both state and federal law is below those hourly rates, Defendants argue that Plaintiffs cannot seek statutorily guaranteed minimum wages. The Court disagrees.

"An employee cannot state a claim for a minimum wage violation unless his average hourly wage falls below the federal minimum wage. A plaintiff's average hourly wage is determined by dividing his total remuneration for employment in any workweek by the total number of hours actually worked by him in that workweek for which such compensation was paid." *Lopez-Serrano v. Rockmore*, 132 F. Supp.3d 390, 402 (E.D.N.Y. 2015) (internal citations omitted). This computation is the same under the NYLL. *See Copper v. Cavalry Staffing, LLC*, 132 F. Supp.3d 460, 466 (E.D.N.Y. 2015); *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp.3d 19, 41-43 (E.D.N.Y. 2015); *Casci v. Nat'l Fin. Network, LLC*, No. 13-CV-1669 (DRH) (GRB), 2015 WL 94229, at *4 (E.D.N.Y. Jan. 7, 2015).

Plaintiffs allege that the first day they worked without pay was Wednesday, July 9, 2014, and that the last day was Tuesday, August 5, 2014. Am. Compl. at ¶ 49. Plaintiffs have thus outlined four seven-day workweeks: (1) July 9, 2014-July 15, 2014; (2) July 15, 2014-July 22,

---

[5] Defendants contradict themselves on this point by simultaneously claiming that it is "impossible to calculate the hourly amount of pay" based upon the information provided. Def. Aff. at ¶ 58.

2014; (3) July 23, 2014-July 29, 2014; and (4) July 30, 2014-August 5, 2014. *Id*. at ¶ 50. Since Plaintiffs claim that they did not receive any compensation for the time worked during those four weeks, the hourly wages for each during this period was $0.00. As such, Plaintiffs have pled hourly wages under the minimum levels set by state and federal law, and the FLSA Claims and NYS Minimum Wage Claims survive Defendants' argument.[6]

## **CONCLUSION**

For the reasons stated above, Defendants' Motion to Dismiss is denied. Plaintiffs have until April 7, 2017 to complete service upon Iakovlev and, immediately thereafter, shall electronically file proof of such service by affidavit with the Court.

SO ORDERED.

Dated: Brooklyn, New York
 March 17, 2017

/s/
DORA L. IRIZARRY
Chief Judge

---

[6] The basic flaw in Defendants' argument is that its arithmetic relies upon the amounts Plaintiffs claim they are owed under the terms of the alleged employment contract (*i.e.*, $0.20 per mile traveled and $20 per loading and unloading). *See* Am. Compl. at ¶¶ 38, 51-52, 93, 107. This claimed compensation clearly is not based on hourly wages. *Id*. at 51-52. Furthermore, as discussed above, the mere fact that Plaintiffs allege the existence of an employment contract that, theoretically, would entitle them to recover more than the minimum compensation due under the FLSA or NYLL does not foreclose on their ability to pursue what is statutorily due to them. *See supra* at § II(B).