UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
VADIM MIKHAYLOV and
ALEXANDR SYSOEV,

                    Plaintiffs,

         -against-

Y & B TRANSPORTATION CO. and YURY
IAKOVLEV,

                    Defendants.
-----------------------------------------------------------------x

**MEMORANDUM & ORDER**
15-CV-7109 (DLI) (VMS)

**DORA L. IRIZARRY, Chief United States District Judge:**

      Plaintiffs Vadim Mikhaylov ("Mikhaylov") and Alexandr Sysoev ("Sysoev") (collectively, "Plaintiffs") bring this action against Y & B Transportation ("Y & B"), and its president, Yury Iakovlev ("Iakovlev") (collectively, "Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA"), New York Labor Law ("NYLL"), and common law claims for breach of contract and unjust enrichment. Plaintiffs formerly worked for Defendants' trucking company.

      On March 7, 2018, Defendants filed a motion for summary judgment. (Memorandum of Law in Support of Motion for Summary Judgment ("Defs.' Mem. Supp. Summ. J."), Docket Entry No. 45.) Plaintiffs oppose the motion. (Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Pls.' Opp'n. Defs.' Mem."), Docket Entry No. 46.) Defendants replied to Plaintiffs' opposition. (Reply to Plaintiffs' Opposition to Defendants' Motion for Summary Judgment ("Reply. Pls.' Opp'n. Mem."), Docket Entry No. 47.)

      For the reasons set forth below, Defendants' motion for summary judgment is granted as to Plaintiffs' FLSA claims, and the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining claims.

## BACKGROUND

Plaintiffs allege that they were swindled out of wages Defendants owed them for work performed over the course of approximately one month, from July 9, 2014 through August 5, 2014. (Defendants' Rule 56.1 Statement ("Defs.' Rule 56.1 Stmt."), Docket Entry No. 45-4, ¶ 43.) Y & B is a long-haul trucking company, organized under the laws of Michigan and doing business in New York. (Amended Complaint ("Am. Compl.") ¶¶ 4, 14.) Iakovlev is president of Y & B. (Affidavit of Yury Iakovlev ("Iakovlev Aff."), Docket Entry No. 45-2.) Iakovlev and Y & B are independent contractors for Divine Enterprises Inc. ("Divine Enterprises"), a California corporation and a federally registered interstate motor carrier.[1] (Defs.' Rule 56.1 Stmt ¶ 2; Iakovlev Aff. ¶¶ 2-3.) The work that Plaintiffs performed was for the benefit of Divine Enterprises, by and through Y & B. Whether Plaintiffs were, in fact, employees of Y & B is the central disputed issue of this case.

In April 2014, Iakovlev contacted Mikhaylov after seeking a referral for a recent graduate from the Red Hook Commercial Driving School in Brooklyn, New York. (Am. Compl. ¶¶ 20-21; Plaintiffs' Response to Defendants' Rule 56.1 Statement ("Pls.' Resp. Defs.' Rule 56.1 Stmt."), Docket Entry No. 46, ¶ 33.) After a phone interview, Iakovlev contracted Mikhaylov to work as a driver for Y & B. (Pls.' Resp. Defs.' Rule 56.1 Stmt. ¶ 3.) From that point until some time in June 2014, Iakovlev and Mikhaylov drove as a team. (Am. Compl. ¶¶ 24, 32; Pls.' Resp. Defs.' Rule 56.1 Stmt. ¶ 55.)

---

[1] The Court notes that Divine Enterprises is not a party to this action and neither party contends Divine Enterprises is a necessary party. *See*, Fed. R. Civ. P. 19 ("A person . . . must be joined as a party if: (A) in that person's absence, the court cannot accord complete relief among existing parties; or (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may: (i) as a practical matter impair or impede the person's ability to protect the interest; or (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.").

In early June 2014, Iakovlev asked Mikhaylov if he could refer another graduate of the Red Hook Commercial Driving School to Y & B. (Am. Compl. ¶ 25; Pls.' Resp. Defs.' Rule 56.1 Stmt. ¶ 34.) Mikhaylov referred Sysoev. (Pls.' Resp. Defs.' Rule 56.1 Stmt. ¶ 34.) Thereafter, Iakovlev contracted Sysoev to work as a driver. (*Id.*; Am. Compl. ¶ 26.) Iakovlev had Mikhaylov train Sysoev, as Iakovlev had trained Mikhaylov. (Am. Compl. ¶ 34.)

Mikhaylov worked for Y & B from May 2014 through August 5, 2014. (Pls.' Resp. Defs.' Rule 56.1 Stmt. ¶ 3.) Sysoev worked for Y & B from June 13, 2014 through August 5, 2014. (Pls.' Resp. Defs.' Rule 56.1 Stmt. ¶ 3; Am. Compl. ¶ 27.)

In order to drive for Divine Enterprises, Plaintiffs submitted to the company: (1) minimum driver qualification information for the purposes of a background check, dated April 30, 2014 for Mikhaylov and June 11, 2014 for Sysoev, and (2) pre-employment Department of Transportation controlled substance test documents dated May 8, 2014 for Mikhaylov and June 13, 2014 for Sysoev. (Pls.' Resp. Defs.' Rule 56.1 Stmt. ¶¶ 6-9; Defs.' Ex. C., Docket Entry No. 45-8; Results of DOT Controlled Substance Test, Defs.' Ex. D, Docket Entry No. 45-9.) In addition, on June 13, 2014, Sysoev signed an agreement with Divine Enterprises entitled "Equipment Lease and Independent Contractor Agreement" (the "Agreement").[2] (Pls.' Resp. Defs.' Rule 56.1 Stmt. ¶¶ 11-14; Defs.' Ex. F, Docket Entry No. 45-11.) Among other provisions, the Agreement set forth the terms of Sysoev's compensation. (*Id.*)

Plaintiffs' compensation was set at $0.20 per mile traveled. (Pls.' Resp. Defs.' Rule 56.1 Stmt. ¶ 42.) In addition, Y & B would reimburse Plaintiffs for work expenses upon submission of

---

[2] It appears the parties were unable to locate Mikhaylov's independent contractor agreement with Divine Enterprises during discovery. (Pls.' Resp. Defs.' Rule 56.1 Stmt. ¶ 12.) However, Plaintiffs do not deny Mikhaylov signed a similar agreement.

3

receipts and documentation. (Iakovlev Aff. ¶ 21.) Plaintiffs initially received payments by check, but eventually were paid by wire transfers. (Am. Compl. ¶ 40.)

Plaintiffs allege that they were not paid for the four weeks they worked from July 9, 2014 to and including August 5, 2014. (Defs.' Mem. Supp. Summ. J. at 1.) According to Plaintiffs, during that time, Mikhaylov and Sysoev worked a total of 122.25 hours and 147 hours, respectively. (Am. Compl. ¶ 50.) Applying the terms of the agreement, Mikhaylov claims he is due $3,040.00 and Sysoev claims he is due $2,967.80. (*Id.* ¶¶ 51-52.)

In addition to being denied compensation, Plaintiffs allege that Defendants have not maintained adequate employment records and have not provided them with notices stating the terms of their compensation or statements documenting Plaintiffs' respective gross wages, deductions, and net wages. (*Id.* ¶¶ 43-45, 54-55; Pls.' Opp'n. Defs.' Mem. ¶ 3.)

In documents dated August 15, 2014, Plaintiffs appeared to have filed claims for unpaid wages with the New York State Department of Labor, although, the exact status of those filings is unknown. (*See generally*, Claims for Unpaid Wages, Defs.' Ex. B, Docket Entry No. 47-5.) In those documents, Plaintiffs alleged that both Divine Enterprises and Y & B failed to pay them wages earned.[3] Plaintiffs also alleged that they "had all the employment documents signed with Divine [Enterprises], but got paid by independent contractor (truck owner) – Y & B Transportation." (Claim for Unpaid Wages at 2.) Also in the claim for unpaid wages documents, Plaintiffs appear to detail a dispute over "damaged cargo," which culminated in Plaintiffs quitting their jobs. (*Id.*)

---

[3] Plaintiffs erroneously appear to refer to Divine Enterprises and Y & B interchangeably as a monolith and to refer to the Equipment Lease and Independent Contractor Agreement Sysoev signed with Divine Enterprises as one between Plaintiffs and Defendants.

Plaintiffs filed this action on December 15, 2015. Plaintiffs allege that Defendants failed to: (1) pay Plaintiffs minimum wages in violation of the FLSA under 29 U.S.C. § 201 *et seq.*; (2) pay Plaintiffs minimum wages in violation of NYLL § 652; (3) provide Plaintiffs with notices of compensation in violation of NYLL § 195(1); (4) provide Plaintiffs with wage statements in violation of NYLL § 195(3); (5) pay Plaintiffs their earned compensation in violation of NYLL § 198(1-a); and further allege Defendants: (6) breached the parties' employment contracts; and (7) have been unjustly enriched. (*See generally*, Am. Compl.)

Presently before this Court is Defendants' motion for summary judgment, which is granted as to the FLSA claims.

## DISCUSSION

**I.      Legal Standard**

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "In ruling on a summary judgment motion, the district court must resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment and determine whether there is a genuine dispute as to a material fact, raising an issue for trial." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations omitted). A fact is "material" within the meaning of Rule 56 when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

To determine whether an issue is genuine, "[t]he inferences to be drawn from the underlying affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion." *Cronin v. Aetna Life Ins. Co.*, 46 F.3d 196, 202

(2d Cir. 1995) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam) and *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir. 1989)). "[T]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] . . . which it believes demonstrate the absence of a genuine issue of fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotations omitted). Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis omitted). The nonmoving party must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Anderson*, 477 U.S. at 256. The nonmoving party may not "rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible, or upon the mere allegations or denials of the nonmoving party's pleading." *Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 532-33 (2d Cir. 1993) (citations and internal quotations omitted). "Summary judgment is appropriate only '[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 141 (2d Cir. 2012) (quoting *Matsushita*, 475 U.S. at 587).

Federal Rule of Civil Procedure 56 provides that, in moving for summary judgment or responding to such a motion, "[a] party asserting that a fact cannot be or is genuinely disputed

must support the assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(l)(A). "An affidavit or declaration used to support or oppose a [summary judgment] motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

"Rule 56's 'requirement that affidavits be made on personal knowledge is not satisfied by assertions made 'on information and belief.'" *Patterson v. County of Oneida, New York*, 375 F.3d 206, 219 (2d Cir. 2004) (citing *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 643 (2d Cir. 1988)). If assertions in an affidavit "are not based upon the affiant's personal knowledge, contain inadmissible hearsay, or make generalized and conclusory statements," a court may strike those portions of the filing, or decline to consider those portions that are not based on personal knowledge or are otherwise inadmissible. *Serrano v. Cablevision Sys. Corp.*, 863 F. Supp.2d 157, 163 (E.D.N.Y. 2012) (citations omitted). While the Court need consider only the materials cited by the parties, it may consider any other materials in the record in deciding a motion for summary judgment. Fed. R. Civ. P. 56(c)(3).

## II. Plaintiffs' FLSA Claims

Plaintiffs allege Defendants violated the FLSA by failing to pay minimum wages for work Plaintiffs performed for Defendants between July 9, 2014 and August 5, 2014. Plaintiffs contend that the parties had an employer-employee relationship, and, therefore, Plaintiffs should be classified as employees within the meaning of the FLSA. (Pls.' Opp'n. Defs.' Mem. ¶ 10.) In turn, Defendants contend that Plaintiffs performed this work as independent contractors, and, thus, are not employees within the meaning FLSA. (Defs.' Mem. Supp. Summ. J. at 11.) The FLSA's

minimum wage provision applies only to those workers who are "employees" and not independent contractors. 29 U.S.C. § 206(a). This issue is addressed first.

### A. *Application of the "Economic Reality Test" Factors*

The FLSA defines an employee as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). To determine whether a worker is an employee, and not an independent contractor within the meaning of the FLSA, courts evaluate the "economic reality" of the relationship between the parties by conducting a holistic inquiry as to whether the worker "depend[s] on someone else's business for the opportunity to render service or [is] in business for [himself]." *Saleem v. Corp. Transportation Grp., Ltd.*, 854 F.3d 131, 139 (2d Cir. 2017) (quoting *Brock v. Superior Care, Inc.* 840 F.2d 1054, 1058-59 (2d. Cir. 1998)). The economic reality test considers five factors, though no single factor is dispositive. *Id.* These are:

> (1) The degree of control exercised by the employer over workers, (2) the workers' opportunity for profit loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business.

*Brock* 840 F.2d. at 1058-59.

While the "existence and degree of each factor [of the economic realities test] is a question of fact, . . . the legal conclusion to be drawn from these facts—whether workers are employees or independent contractors—is a question of law." *Mc Guggian v. CPC Int'l, Inc.*, 84 F. Supp. 2d 470, 480 (S.D.N.Y. 2000) (quoting *Brock v. Superior Care* 840 F.2d. at 1059)). A court may make a determination as a matter of law that workers should be categorized as independent contractors when there are no genuine disputed issues of material fact. *Browning v. Ceva Freight LLC*, 885 F. Supp.2d 590, 598 (E.D.N.Y. 2012).

8

1. <u>Degree of Control Over Workers</u>

Defendants contend that Y & B had little control over Plaintiffs because Plaintiffs: (1) had the ability to create their own schedule to complete the trips they agreed to perform; (2) had the ability to choose their driving routes; (3) could refuse or decline work at any time without penalty; and (4) were controlled only to the extent needed to satisfy client demands. (Defs.' Mem. Supp. Summ. J. at 6-9, 12-13; *See generally*, Driver's Logs, Defs.' Ex. E, Docket Entry No. 45-10; Iakovlev Aff.) In support of these factual contentions, Defendants rely on Plaintiffs' driver's logs, which indicate that Plaintiffs worked varying hours through the course of their trips, and Iakovlev's sworn affidavit. (*See generally*, Driver's Logs; Iakovlev Aff.)

Plaintiffs deny that they had such a degree of control over their work. Plaintiffs counter that they: (1) received specific instructions from Defendants about "where to go;" (2) notified Defendants when they picked up or dropped off shipments; and (3) had to work a certain number of hours per day. (Pls.' Opp'n. Defs.' Mem. ¶¶ 10-13.)

Here, Plaintiffs' routes were subject to dispatching instructions from Divine Enterprises, which were sent to a representative of Y & B and then forwarded to Plaintiffs. Plaintiffs' driver's logs indicate that Plaintiffs worked different hours and fractions of hours each day.[4] (*See generally*, Driver's Logs.) This evidence indicates that, although Y & B had a degree of control over Plaintiffs day to day work during their trips, Plaintiffs did not have preset hours subject to Defendants' control. (*Id.*) Moreover, it appears that Y & B and Plaintiffs were subject the direction of Divine Enterprises, and both Plaintiffs and Defendants appeared to have acted in an independent contractor capacity. (*See*, Pls.' Resp. Defs.' Rule 56.1 Stmt. ¶¶ 23-24.)

---

[4] For example, Plaintiffs drove 10 hours on July 12, 2014, 15.75 hours on July 18, 2014, 14.5 hours on July 23, 2014, 17 hours on July 24, 2014, and 17.25 hours on July 25, 2014. (Pls.' Resp. Defs.' Rule 56.1 Stmt. ¶ 50; *See generally*, Driver's Logs.)

Accordingly, based on the record, the Court finds that the degree of control Defendants exercised over Plaintiffs weighs in favor of classifying Plaintiffs as independent contractors.

2. Workers' Opportunity for Profit or Loss

In determining whether a worker had an opportunity for independent profit or loss and investment in the business, courts have considered whether workers: (1) had principal control over how much money they earned as a result of the number of jobs they took; (2) made decisions affecting their overall profitability; (3) determined their own driving routes; or (4) have invested in the business. *Saleem*, 854 F.3d at 144-45; *Arena v. Delux Transp. Servs., Inc.*, 3 F. Supp.3d 1, 12, (E.D.N.Y. 2014); *Browning*, 885 F. Supp.2d 590 at 605-06; *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp.2d 184, 191 (S.D.N.Y. 2003).

Defendants contend that Plaintiffs had the opportunity for profit or loss in business because: (1) Plaintiffs were able to choose whether to drive by themselves or with a partner, directly impacting their compensation rate; (2) Plaintiffs were free to decide whether to drive more or less per day; and (3) Plaintiffs had autonomy in choosing the route to their destination. (Defs.' Mem. Supp. Summ. J. at 13-16.) Defendants maintain that such choices had a direct impact on the Plaintiffs' profitability because: (1) Plaintiffs were compensated at double the rate for solo driving than they were for partnered driving; (2) their choice to drive less than the maximum amount of hours permitted by law per day resulted in an overall loss of time that Plaintiffs could have used to complete other work; and (3) Plaintiffs' ability to choose their routes had a direct impact on mileage, which determined their overall compensation. (*Id.*; *See generally*, Driver's Logs; Iakovlev Aff.)

Plaintiffs baldly deny Defendants contentions. They proffer no evidence contradicting Defendants' assertions regarding compensation rates, autonomy in choosing driving routes, or

assessments of the driver's logs. Notably, Plaintiffs attempt to diminish the significance of their concession that Plaintiffs do have control over their route choices and, ultimately their leeway in increasing compensation, by stating:

> While Defendant Iakovelv's affidavit does state that Plaintiffs chose which ever route they seemed fit, to get from California to New York . . . they had a set schedule which they had to follow. Plaintiffs however do not admit to its accuracy, and further deny this allegation and assert that the Defendants had a great deal of control over what Plaintiffs took—since that is the same amount of control any employer has over any employee . . .

(Pls.' Resp. Defs.' Rule 56.1 Stmt. ¶ 25.) Plaintiffs' bare denials are insufficient. Furthermore, Plaintiffs' assertions that they had set schedules are contradicted by the driver's logs, which demonstrate that Plaintiffs had uneven hours during each trip. (*See generally*, Driver's Logs.)

Accordingly, based on the record, the Court finds Plaintiffs' opportunity for profit or loss weighs in favor of classifying Plaintiffs as independent contractors.

               3.        <u>Degree of Skill and Independent Initiative Required to Perform Work</u>

Independent contractor status is indicated by a high degree of skill and independent initiative exhibited by the worker. *See*, *Brock* 840 F.2d at 1060; *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp.2d 901, 920 (S.D.N.Y. 2013). Skill, however, is not in itself indicative of independent contractor status. *Brock* 840 F. 2d at 1050 ("A variety of skilled workers who do not exercise significant initiative in locating work opportunities have been held to be employees under the FLSA"). Although some courts do not consider drivers in every industry to be highly skilled, courts have found trucking positions, particularly those that involve the transportation of cargo, to demonstrate a high level of skill. *Compare Gustafson v. Bell Atl. Corp.*, 171 F. Supp.2d 311, 326 (S.D.N.Y. 2011) ("there is no genuine dispute that plaintiff's duties as a chauffeur required no specialized skill or initiative") *with Browning*, 885 F. Supp.2d at 608-09 (stating that plaintiff truckers "needed to have professional driving skills, knowledge of Department of Transportation

regulations, and freight-handling skills.") *and Area v. Delux Transp. Servs., Inc.*, 3 F. Supp.3d 1, 12 (E.D.N.Y. 2014) (determining that a Taxi driver's responsibility of navigating his routes, maintaining safety of passengers, and initiative in accepting dispatched calls constituted a skill set that favored against employee status).

Here, the parties' submissions contain no discussion of the level of independent initiative undertaken by the Plaintiffs. However, the parties agree that Plaintiffs were "skilled truck drivers with professional training." (Pls.' Resp. Defs.' Rule 56.1 Stmt. ¶ 53.) The parties also agree that Plaintiffs brought valuable skills to their business relationship with Y & B and Divine Enterprises that included "professional driving skills, knowledge of the Department of Transportation regulations and freight-handling skills." (*Id.* ¶ 54.) Furthermore, Plaintiffs graduated from truck driving school and obtained valid commercial driver's licenses. (*Id.* ¶ 56.)

Accordingly, based on the record, the Court finds the degree of skill and independent initiative required to perform work weighs in favor of classifying Plaintiffs as independent contractors.

4. <u>Permanence of the Working Relationship</u>

In evaluating the permanence of the working relationship between parties, courts have analyzed both: (1) the duration of the working relationship between parties; and (2) whether the workers were free to perform work for others while working for the company in question. *Lee v. ABC Carpet & Home*, 186 F. Supp.2d 447, 456 (S.D.N.Y. 2002); *Velu v. Velocity Exp., Inc.*, 666 F. Supp.2d 300, 307 (E.D.N.Y. 2009) ("plaintiff may work for other companies while continuing his relationship with [current company]"); *Brock*, 840 F.2d. at 1060-61. Where the record indicates that a worker performed the job on "essentially a full-time basis," this factor favors a finding that the worker is an employee as opposed to an independent contractor. *Ethelberth v.*

*Choice Sec. Co.*, 91 F. Supp.3d 339, 351-52 (E.D.N.Y. 2015). Contractual agreements that describe workers as independent contractors are not necessarily controlling; however, such designation is "pertinent to the parties' beliefs about the nature of the relationship". *Saleem,* 854 F.3d at 141 (quoting *Estate of Suskovich v. Anthem Health Plans of Va., Inc.*, 554 F.3d 559, 564 (7th Cir. 2009)).

Here, Defendants proffer evidence suggesting that Plaintiffs had independent contractor agreements with them and did not have a permanent business relationship with Defendants. Defendants contend that: (1) the independent contractor agreement allowed either party to terminate the relationship at any time upon 30 days notice, and (2) Plaintiffs were free to refuse or decline work without penalty, provided they had not already started driving. (Defs.' Mem. Supp. Summ. J. at 17-18; *See generally*, Independent Contractor Agreement.) Plaintiffs, in turn, contend that (1) "the parties have been working together for several years," (2) Defendants were Plaintiffs' only employers, and (3) Plaintiffs did not have control over their work schedule. (Pls.' Opp'n. Defs.' Mem. ¶¶ 10, 13.)

First, contrary to Plaintiffs' contention that they had been working with Defendants for several years, it is undisputed that Plaintiffs worked for Defendants for no longer than three (3) months and five (5) days. (Pls.' Resp. Defs.' Rule 56.1 Stmt. ¶¶ 3, 43.)

Second, the Agreement signed by Sysoev with Divine Enterprises, although ultimately useful in determining the classification of the relationship between the parties, was not signed by Y & B. Both Plaintiffs and Defendants appear to misclassify the Agreement as one between the parties consistently in their briefing. However, based on the record, the Agreement does appear to indicate at least that Plaintiffs' working relationship with Y & B was that of an independent contractor. For instance, all work Plaintiffs performed was for Divine Enterprises, in conjunction

13

with Y & B. The Agreement states that "[t]he [i]ndependent contractor is free to accept or decline any load offered by [Divine Enterprises's] dispatcher, in accordance with the needs of his business." (Independent Contractor Agreement ¶ 43.) Taking into account that Plaintiffs worked for one client, it appears that Plaintiffs had this same degree of latitude in their relationship with Y & B during their trips. Although Plaintiffs deny that they were able to work elsewhere or decline work without penalty, Plaintiffs again fail to point to any specific facts or portions of the record that would substantiate their assertions.

Accordingly, based on the record, the Court finds the permanence of the working relationships weighs in favor of Plaintiffs' classification as independent contractors.

### 5. Work as an Integral Part of the Business

As for the fifth factor, whether work performed by Plaintiffs was integral to the business, Defendants assert that "pick-up and delivery of . . . products were important, but only one of the many aspects of Y & B and Divine Enterprises logistics and transportation business." (Iakovlev Aff.; Defs.' Mem. Supp. Summ. J. at 18.) Plaintiffs counter that work they performed was integral to Defendant's trucking business because drivers are essential components of the delivery and pickup of merchandise. (Pls.' Opp'n. Defs.' Mem. ¶ 16.)

Despite finding that the work performed by Plaintiffs was integral to the Defendants' business, the weight of this factor is diminished where the work performed easily is interchangeable with work by other drivers. *Browning*, 885 F. Supp.2d at 610 ("Therefore, while the [p]laintiffs' work was integral to. . . [company]; this factor only weighs slightly in favor of finding that the [p]laintiffs should qualify as employees under the FLSA, and would not prevent this Court from finding, as a matter of law, that the [p]laintiffs are independent contractors"); *Velu*, 666 F. Supp.2d at 307 (noting that although the plaintiff's work was an integral part of defendant's

14

business model, the work being performed by the driver was interchangeable with the work of other drivers); *Arena v. Plandome Taxi, Inc.*, 2014 WL 1427907, at *6 (E.D.N.Y. Feb. 26, 2014) ("[t]his factor provides little assistance in determining the employment relationship" because although the driver's operation was essential to the business, it was equally as important that the driver was not indispensable). Here, Plaintiffs were not indispensable and were interchangeable with other drivers.

Accordingly, based on the record, the Court finds that whether work performed by Plaintiffs was integral to the business does not weigh in favor of Plaintiffs being classified as employees.

### B. *Plaintiffs Are Not Employees Within the Meaning of the FLSA*

Based on the foregoing analysis, the Court finds Plaintiffs were in business for themselves, i.e., were independent contractors, under the "economic reality" test. *See*, *Saleem*, 854 F.3d at 139. While evidence adduced through discovery does not precisely define the employment relationship Plaintiffs had with Defendants and Divine Enterprises, Plaintiffs have not set forth evidence indicating that the factors of the economic reality test actually are disputed and, instead, rely on bare denials.

Accordingly, Plaintiffs' FLSA claims are dismissed.

### III. Plaintiffs' Remaining Claims are Dismissed for Lack of Subject Matter Jurisdiction

Plaintiffs' remaining claims under NYLL and for breach of contract and unjust enrichment arise under state law. A district court's exercise of supplemental jurisdiction is governed by 28 U.S.C. § 1367(a), which provides that "district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a).

"[A] district court 'may decline to exercise supplemental jurisdiction' if it 'has dismissed all claims over which it has original jurisdiction.'" *Kolari v. New York-Presbyterian Hosp.*, 455 F.3d 118, 122 (2d Cir. 2006) (quoting 28 U.S.C. § 1367(c)(3)). A district court's discretion is guided by "balanc[ing] the traditional 'values of judicial economy, convenience, fairness, and comity.'" *Id.* (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). "[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims." *Kolari*, 455 F.3d at 122 (quoting *Cohill*, 484 U.S. at 350 n.7) (ellipsis in original).

In light of the forgoing factors, the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, which are dismissed without prejudice.

## **CONCLUSION**

For the forgoing reasons, Defendants' motion for summary judgment is granted as to Plaintiffs' FLSA claim and the Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims, which are dismissed. Accordingly, this action is dismissed without prejudice as to the state law claims.

SO ORDERED.

Dated: Brooklyn, New York
      March 31, 2019

                                                            / s /
                                          DORA L. IRIZARRY
                                              Chief Judge